UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMALL COPELAND,                )
                                )
          Petitioner,           )
                                )
                                )   CIVIL ACTION NO.
                                )   10-11215-DPW
          v.                    )
                                )
                                )
                                )
MASSACHUSETTS DEPARTMENT OF     )
CORRECTIONS and DUANE           )
MacEACHERN, Superintendent,     )
                                )
          Respondents.          )

MEMORANDUM AND ORDER
March 11, 2014

After unsuccessfully appealing his convictions on firearms

charges in Massachusetts state court, petitioner Jamall Copeland

now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254.

As grounds for federal relief, Copeland advances the three

grounds that formed the basis of his state court appeal: (1) that

the prosecutor misstated the evidence in his closing argument;

(2) that there was insufficient evidence of Copeland's

constructive possession of a firearm; and (3) that Copeland's

jury waiver as to the portion of the firearms indictment alleging

third offense and armed career criminal enhancements was

ineffective because the trial judge may not have been aware that

-1-

she could empanel a new jury to hear those charges.  Finding no
unreasonable application of relevant Federal law or unreasonable
determination of the facts in the governing state court judgment,
I will deny habeas corpus relief.

## I.  BACKGROUND

### A.  *Facts*

On habeas review, factual determinations made by state
courts are presumed correct absent clear and convincing evidence
to the contrary.  28 U.S.C. § 2254(e)(1); *Miller-El* v. *Cockrell*,
537 U.S. 322, 340 (2003).  The following facts are drawn from the
summary of the relevant evidence recounted by the Massachusetts
Appeals Court, supplemented where necessary by the state record
viewed in the light most favorable to the conviction under
challenge here.

On the morning of October 13, 2004 two men, one of whom was
displaying a weapon, took Daryl Powell to a car after asking him
where his money was.  Powell's companion Kyesha Elliot, who was
not taken to the car, called the police to report a kidnapping.
Shortly thereafter, police located the car and observed Powell
exiting it.  The car, with two men in it, sped away and was later
located empty.

During the search for the men who had fled the car, Copeland
- the petitioner before me - was found in a small, enclosed space

-2-

in the basement of a home in the Dorchester neighborhood of
Boston.  Shining his flashlight through a hole in the sheetrock
enclosing the space, an officer discovered Copeland kneeling on a
wooden pallet with his hands near his waist, out of the officer's
sight.  Copeland ignored numerous commands to show his hands.
Another officer arrived on scene and observed Copeland kneeling
on the pallet with his hands between his legs; he too ordered
Copeland to show his hands at least eight times.  Eventually,
Copeland lowered his head toward the floor with his backside in
the air and slowly put his hands out in front of him.

Once Copeland finally showed his hands, one of the officers
stuck his head through the hole in the sheetrock and shined his
flashlight around the room.  Behind a pillar, he spotted a
shoulder belonging to Copeland's co-defendant, Dennis Winborn.
Winborn fired three shots in the direction of the officer.  The
officer returned fire, striking Winborn in the knee.  Winborn
fell to the floor and dropped his gun.

A police canine responding to the scene tracked a scent from
the car from which Powell had been released to the basement where
Copeland and Winston were found.  After Copeland and Winston were
arrested, the police searched the basement for evidence.  In
addition to the gun Winborn had dropped, police recovered a
second gun from between the slats of the pallet on which Copeland

-3-

had been kneeling.  The gun found in the pallet had one bullet in the chamber and a magazine containing twelve rounds of ammunition.  At trial, Elliot testified that the gun looked like the one that the lighter-skinned of the two kidnappers — who was wearing a dark blue hooded sweatshirt and had braided hair — had drawn on her.[1]  Copeland is lighter-skinned than Winston.  He was wearing a dark blue hooded sweatshirt with his hair braided in cornrows when he was arrested.

**B.  *Procedural History***

On November 30, 2004, a Suffolk County grand jury returned five indicments against Copeland: (1) armed assault with intent to murder; (2) unlawful possession of a firearm as a third offense and as an armed career criminal; (3) unlawful possession of a large capacity feeding device for a large capacity weapon; (4) kidnapping; and (5) armed assault with intent to rob. Indictments 2 and 3, which are the subject of this petition, arose from Copeland's alleged constructive possession of the firearm recovered from the pallet following his standoff with police.[2]

---

[1] Powell also testified during the trial and said that Copeland and Winborn did not look like his kidnappers.  He conceded, however, that he had been called to testify against his will and was "not the type of person that testif[ies] on people."

[2] Count 1 alleged Copeland was liable as a joint venturer in Winston's attempt to shoot the police officer.  Counts 4 and 5

1.   Trial

In May 2006, Copeland's case was tried to a jury in Suffolk
Superior Court.  Pursuant to Mass. Gen. Laws ch. 278, § 11A, the
trial was bifurcated so that the jury would not learn of the
"third offense" and armed career criminal portion of the firearms
indictment until after it had returned a guilty verdict on the
underlying possession charge.  Following the close of the
Commonwealth's evidence, and again at the close of all evidence,
Copeland filed motions for required findings of not guilty, which
were denied.  On May 19, 2006 the jury found Copeland guilty of
unlawful possession of a firearm and unlawful possession of a
large capacity feeding device, and acquitted him of the other
charges.

After the jury had been dismissed, the trial judge proceeded
to address the third offense and armed career criminal portions
of the firearm possession indictment.  She informed Mr. Copeland
that "you are entitled to try to a jury, the same jury, [on]
those two separate counts . . ."  She then asked Mr. Copeland if
it was his intention, as his counsel had indicated, to waive his
right to a jury trial on those two counts, to which he replied:
"Yes."  She further stated: "But you understand that you have

---

arose from Copeland's alleged role in the abduction of Daryl
Powell.

every right to have this jury consider the evidence and the Commonwealth would have to prove beyond a reasonable doubt that indeed you were the Jamall Copeland who was convicted in January of 1991 and also in December of 1991 of two separate firearm charges," to which Mr. Copeland replied that he understood.

Copeland opted to waive his right to a jury and proceed with a jury-waived trial on the remaining charges.  Following that trial, which was held immediately prior to his sentencing several weeks later, the judge found Copeland guilty of the third offense and armed career criminal portions of the firearms indictment. She then sentenced Copeland a to a term of fifteen years on the charge of unlawful possession of a firearm, and a term of three to five years from and after the firearm sentence for unlawful possession of a large-capacity feeding device.  Copeland is currently serving his sentence at MCI Cedar Junction.

2.  Post-trial Proceedings

Copeland timely appealed, and the Massachusetts Appeals Court affirmed his convictions on December 17, 2009 in an unpublished opinion issued pursuant to that Court's Rule 1:28. *Commonwealth* v. *Copeland*, 918 N.E.2d 480 (table), 2009 WL 4842239 (Mass. App. Dec. 17, 2009).  The Massachusetts Supreme Judicial Court denied further appellate review on February 24, 2010.

-6-

Having exhausted his state direct appeal remedies, Copeland
timely filed this petition on July 15, 2010.[3]

## II.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, a federal court may
grant a state prisoner habeas relief if the state court's
decision on the merits "resulted in a decision that was contrary
to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States," or "resulted in a decision that was based on
an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."  28 U.S.C. §
2254(d).

The Supreme Court has narrowly interpreted "clearly
established federal law" to refer "to the holdings, as opposed to
the dicta, of [the Supreme] Court's decisions as of the time of

---

[3] Mr. Copeland, who is *pro se*, filed a motion on October 20, 2011
seeking a stay of this habeas proceeding on the grounds that he
"still ha[d] motions to file in the Suffolk Superior Court."  By
order dated April 7, 2012, I reserved ruling on the motion
pending receipt, on or before May 2012, of a status report from
Mr. Copeland regarding any pending motions for new trial in the
Superior Court.  Mr. Copeland having failed to provide
justification for his request for a stay despite being afforded a
substantial additional amount of time within which to do so, I
gave notice I was lifting the stay (which I previously had
observed informally) and took the matter under advisement on the
merits.

the relevant state-court decision." *Williams* v. *Taylor*, 529 U.S. 362, 412 (2000).  A state court's decision is "contrary to" such law if its conclusion is "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.  A state court's decision "involve[s] an unreasonable application" of such law if the court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Moreover, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico* v. *Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411).  Instead, "that application must be objectively unreasonable.  This distinction creates a substantially higher threshold for obtaining relief than de novo review." *Id.* (internal citations omitted).  The First Circuit has interpreted the "unreasonable application" standard to mean that "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *L'Abbe* v.

-8-

*DiPaolo*, 311 F.3d 93, 98 (1st Cir. 2002) (citation and quotation marks omitted).

Courts look to the last reasoned state court decision in determining a petitioner's eligibility for federal habeas relief. *Malone* v. *Clarke*, 536 F.3d 54, 63 (1st Cir. 2008) (citation omitted).   In this case, the last reasoned decision is the opinion of the Massachusetts Appeals Court.   *Copeland*, 918 N.E.2d 480 (table), 2009 WL 4842239.

## III.   DISCUSSION

### A.   *Prosecutorial Misconduct*

During his closing argument, the trial prosecutor made the following argument:

> How long does it take before [Copeland] finally shows his hands?  And you know what, ladies and gentlemen? The defense wants to focus on the minutia.  Is it between the legs?  Is it in the budge?[4]  You heard the testimony.  It speaks for itself.  There's no question that Jamall Copeland refused to show his hands. Because he had a .9mm fully loaded Glock semiautomatic handgun in his possession and he was putting it right between his legs, right on that pallet where he was sitting on top of.

Later in the closing, the prosecutor argued that Copeland was found "with a [] gun between his legs."

Trial counsel for Copeland objected, and following closing arguments, the judge reminded the jury that closing arguments are

---

[4] The Commonwealth contends that "budge" refers to Copeland's waist area.

not evidence, and specifically instructed them that she did not
"believe [that there was] any direct evidence of anyone observing
Mr. Copeland with a gun physically — being held physically
between his legs," but also that "it is your memory that controls
and not mine."

On appeal, Copeland argued that the prosecutor made two
misstatements during his closing argument:  First, that the
prosecutor misstated the evidence when he said the defendant
refused to show his hands because he had a gun in his possession
and was hiding it in the pallet; and second, that the evidence
did not support the prosecutor's statement that the defendant was
found by police with a gun between his legs.

As to the first alleged misstatement, the Appeals Court
disagreed.  The Appeals Court found that the evidence at trial
showed that:

> The defendant was found kneeling on a pallet in a
> cellar after having been chased by police who responded
> to a call reporting an armed kidnapping.  The defendant
> kept his hands between his legs despite repeated
> demands by police to display them.  He then made
> movements consistent with placing the gun beneath the
> pallet before displaying his hands to police.

*Copeland*, 918 N.E.2d 480 (table), 2009 WL 4842239.  In light of
that evidence, the Appeals Court found that "[i]t certainly did
not stray beyond the permissible bounds of argument for the
prosecutor to argue that the reason for the defendant's delay in

-10-

showing his hands to police was that he wanted first to dispose
of the gun he was holding." *Id.*

As to the second alleged misstatement, the Appeals Court
agreed that the evidence did not support the prosecutor's
statement that the defendant was found by police with a gun
between his legs.  However, the Appeals Court found that "any
prejudicial effect from the statement was cured when, at the
defendant's request, the judge instructed the jury that no
witness had testified to seeing the defendant with a gun
physically between his legs," and reminded the jury that "closing
arguments are not evidence and that the jurors should rely solely
on their own recollections of the evidence." *Id.*

In his petition,[5] Mr. Copeland argues that the Appeals Court
erred by finding that the trial prosecutor's misstatement of the
evidence during closing argument was not prejudicial.  Because he
has not submitted a memorandum of law drafted specifically for
use in this habeas proceeding, but instead relies on the
substance of his petition for Further Appellate Review that he
submitted to the SJC, he does not explicitly argue that the state
court's decision "resulted in a decision that was contrary to, or

---

[5] In lieu of submitting a memorandum of law in support of his
habeas petition, Mr. Copeland has asked me to accept his
Application for Leave to Obtain Further Appellate Review that he
previously submitted to the Supreme Judicial Court.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Nevertheless, I have examined the substance of Mr. Copeland's petition to the extent it would support such an argument. *See Dutil* v. *Murphy*, 550 F.3d 154, 158 (1st Cir. 2008) (recognizing that *pro se* litigants are held to less demanding standards in order "to guard against the loss of pro se claims due to technical defects.").

In order to prevail on claim of prosecutorial misconduct during closing argument, a habeas petitioner must demonstrate that improper statements in closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 643 (1974). The First Circuit has observed that "[t]here is no precise federal standard governing due process claims based on a prosecutor's remarks," *Dagley* v. *Russo*, 540 F.3d 8, 15 n.3 (1st Cir. 2008), and because the *Donnelly* "fundamental unfairness standard" is "general in nature . . . state courts have 'more leeway in . . . reaching outcomes in [their] case-by-case determinations.'" *Id.* at 18 (quoting *Yarborough* v. *Alvarado*, 541 U.S. 652, 664 (2004)) (alterations in original). In analyzing a claim like Mr. Copeland's, the First Circuit has considered "the severity of the misconduct, whether it was

deliberate or accidental, the context in which it occurred, the likely curative effect of the judge's admonitions and the strength of the evidence against the defendant." *United States* v. *Udechukwu*, 11 F.3d 1101, 1106 (1st Cir. 1993) (internal quotation marks and citation omitted).

Mr. Copeland's claim of prosecutorial misconduct fails even to approach the demanding standard applicable to petitions for habeas relief.  First, Mr. Copeland fails to articulate how the Appeals Court erred – much less committed an error of the degree required for habeas relief — in concluding that the prosecutor's first alleged misstatement was not a mischaracterization of facts in evidence but rather a proper argument based on those facts. Based on the testimony at trial, it was proper for the prosecutor to argue that Copeland's actions when ordered by police to show his hands were consistent with an attempt to hide the gun that was ultimately recovered from inside the pallet.

Second, Mr. Copeland fails to demonstrate how the Appeals Court erred by concluding that trial judge's curative instruction to the jury — which included the judge's recollection that "no witness had testified to seeing the defendant with a gun physically between his legs," *Copeland*, 918 N.E.2d 480 (table), 2009 WL 4842239 — was effective to cure whatever prejudice might have resulted from the prosecutor's statement.  Copeland argued

-13-

in his Application for Further Appellate Review that "[g]iven the acquittal on all other charges, there is no fair assurance that the guilty verdict on the firearm charges was not adversely impacted by the improper argument by the prosecutor."  But that argument ignores the strength of the other evidence supporting his conviction on the firearms possession charges, as well as the fact that the "harmless error" standard of review that applied to this issue before the Appeals Court has risen to a much more demanding standard in this habeas proceeding.  The habeas standard requires Copeland to demonstrate that the single improper statement made by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly,* 416 U.S. at 643.  He has failed to do so.

**B.  *Sufficiency of the Evidence***

    Copeland next argues that the evidence at trial was insufficient to support his conviction for possession of a firearm on a theory of constructive possession, and that the Appeals Court erred in finding otherwise.

    The standard under the Due Process Clause of the Fourteenth Amendment for whether a conviction is based on sufficient evidence is set out in *Jackson* v. *Virginia*, 443 U.S. 307 (1979). That standard requires a federal court to evaluate "whether,

-14-

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). As previously noted, on habeas review, factual determinations made by state courts are presumed correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). "In practice, habeas review under *Jackson* . . . is reserved for unusual cases and its standard 'is rarely met where there is plausible evidence to support a verdict.'" *Sivo* v. *Wall*, 644 F.3d 46, 50 (1st Cir. 2011) (quoting *Tash* v. *Roden*, 626 F.3d 15, 20 (1st Cir. 2010)). Thus, "*Jackson* applies where there is no substantial evidence of guilt or where the evidence amounts to little more than colorable speculation." *Id.*

Here, the Appeals Court evaluated Copeland's argument under a standard equivalent to *Jackson* as set forth in *Commonwealth* v. *Latimore*, 393 N.E.2d 370, 374 (Mass. 1979) (citing *Jackson*, 443 U.S. at 318-19); *see also Leftwich* v. *Maloney*, 532 F.3d 20, 24 (1st Cir. 2008) ("[T]he *Latimore* court adopted the governing federal constitutional standard as the Massachusetts standard for sufficiency of the evidence challenges . . . ."). As a result, Copeland can prevail only if he is able to demonstrate that the Appeals Court's effective application of the *Jackson* standard was an unreasonable application of Supreme Court precedent.

Proof of constructive possession requires the Commonwealth to show "knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Brzezinski*, 540 N.E.2d 1325, 1331 (Mass. 1989) (quoting *Commonwealth* v. *Rosa*, 459 N.E.2d 1236, 1238 (Mass. App. 1984)).  "Proof of possession of [contraband] may be established by circumstantial evidence, and the inferences that can be drawn therefrom." *Id.* (quoting *Commonwealth* v. *LaPerle*, 475 N.E.2d 81, 83 (Mass. App. 1985)). "Presence alone cannot show the requisite knowledge, power, or intention to exercise control over [contraband], but presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.'" *Commonwealth* v. *Albano*, 365 N.E.2d 808, 810 (Mass. 1977) (quoting *United States* v. *Birmley*, 529 F.2d 103, 108 (6th Cir. 1976)).

The Appeals Court observed that while proximity to, and awareness of, an illegal item are not sufficient to prove constructive possession, there were abundant 'plus' factors indicating Copeland's ability and intention to exercise control over the gun in question. *Copeland*, 918 N.E.2d 480 (table), 2009 WL 4842239 (citing *Commonwealth* v. *Brown*, 609 N.E.2d 100, 102-03 (Mass. App. 1993)). As found by the Appeals Court, these plus factors included that:

the defendant was found kneeling on the wooden pallet
under which the gun was found; the defendant refused to
remove his hands from between his legs despite several
orders from armed police to that effect; when the
defendant finally complied with police orders, he made
motions consistent with hiding the gun in the pallet;
the gun was clean despite being found in a dusty,
unused part of a basement; and finally, the defendant
was identified by an eyewitness as the man who
participated in an armed kidnapping using a similar-
looking gun earlier in the day, and there was
additional evidence corroborating that identification.

*Id.*  Taking these facts together, it was reasonable for the

Appeals Court to hold that a rational trier of fact could

conclude beyond a reasonable doubt that Copeland constructively

possessed (and in fact had previously actually possessed) the gun

found in the pallet.

In his petition, Copeland objects to the final 'plus' factor

cited by the Appeals Court — that "the defendant was identified

by an eyewitness as the man who participated in an armed

kidnapping using a similar-looking gun earlier in the day," *id.* —

as a mischaracterization of the evidence.

Copeland's contention appears technically correct in the

sense that neither Elliot nor Powell directly identified Copeland

as one of the kidnappers at trial.  This is not surprising given

their testimony that the kidnappers were wearing ski masks

covering their faces.  However, the thrust of the Appeal Court's

assertion is, in substance, also correct since such an

-17-

identification could be said to have been made obliquely through
the testimony of Elliot.  Elliot testified that the gun recovered
from under the pallet looked like the gun held by one of the two
kidnappers, who was a lighter-skinned black man with braided hair
wearing a blue hooded sweatshirt and a ski mask.  When Copeland
was arrested, he was wearing a dark blue hooded sweatshirt and
his hair was braided in cornrows.  I recognize that for his part,
Powell testified that Copeland and Winston did not look like the
kidnappers, but he also made clear that he had been called to
testify against his will and that he was "not the type of person
that testif[ies] on people."  In this circumstance, the Appeals
Court thus reasonably could have concluded that the jury had
credited the testimony of Elliot, and disregarded the testimony
of Powell as not credible.

In sum, Copeland has not met his burden of demonstrating
by clear and convincing evidence that the Appeals Court's
determination of the facts was unreasonable.  Nor has he
demonstrated that based on its determination of the facts, the
Appeals Court unreasonably applied the law of constructive
possession in determining the sufficiency of the evidence.

## C.  *Effectiveness of Jury Waiver*

Finally, Copeland challenges the Appeals Court's
determination that his jury waiver as to the third offense and

armed career criminal portions of the firearm possession indictment was effective.  On appeal, Copeland argued that the trial judge's remarks informing him of his right to have those portions of the indictment tried before "the same jury" and "this jury" suggest that she was not aware of her discretion to empanel a new jury to decide those remaining charges.  Because Copeland allegedly relied on the trial judge's allegedly mistaken impression that she could not empanel a new jury for those charges, he argues that his jury waiver was not made knowingly and voluntarily.

Copeland's argument is based on Mass. Gen. Laws ch. 278, § 11A, which provides for a bifurcated trial where the offense charged is a second or subsequent offense.  In such circumstances, subject to certain exceptions, "no part of the complaint or indictment which alleges that the crime charged is a second or subsequent offense shall be read or shown to the jury or referred to in any manner during trial . . . ."  *Id.*  The statute further provides that if the defendant is convicted of the underlying offense, pleads not guilty to the second or subsequent offender portion of the indictment, and opts for a jury trial on the remaining charges, "[t]he court may, in its discretion, either hold the jury which returned the verdict of guilty of the crime, the trial of which was just completed, or it

may order the impaneling of a new jury to try the issue of

conviction of one or more prior offenses." *Id.*

In rejecting Copeland's argument on appeal, the Appeals

Court stated as follows:

> Contrary to the defendant's argument, these comments
> [by the trial judge] do not reasonably give rise to the
> inference that the judge was unaware of her discretion
> to empanel a new jury. *See Fuentes* v. *Commonwealth*,
> 448 Mass. 1017, 1018 n. 1, 863 N.E.2d 43 (2007) (where
> trial judge stated that she had "no choice . . . but to
> declare a hung jury," the court refused to conclude
> that the judge was unaware of her discretion on the
> matter). Regardless, the defendant had no right to be
> informed of the judge's discretion in any event.
> General Laws c. 278, § 11A, does not grant defendants a
> right to a new jury, and a judge may decline to empanel
> a new jury even where a defendant requests it. *See,
> e.g.*, *Commonwealth* v. *Thompson*, 427 Mass. 729, 736–737,
> 696 N.E.2d 105 (1998). A judge is under no compulsion
> to explain this discretionary authority to a defendant
> during the colloquy.

*Copeland*, 918 N.E.2d 480 (table), 2009 WL 4842239.

Copeland cites to no Supreme Court authority to support his

claim that the trial judge should have informed him of her

discretion to empanel a new jury for trial on subsequent offense

or equivalent charges, nor could I find any. This fact alone is

fatal to Copeland's jury waiver claim in the context of this

habeas proceeding. *See Brown* v. *Ruane*, 630 F.3d 62, 68 (1st Cir.

2011) (citing *Carey* v. *Musladin*, 549 U.S. 70, 77 (2006)) ("A

threshold determination that no holding of the Supreme Court

required application to the factual context presented by the
petitioner's claim is dispositive in the habeas analysis.").

Nor, even if I were to apply general pronouncements by the
Supreme Court regarding what constitutes an effective waiver of
the Sixth Amendment right to trial by jury, *see, e.g., Brady* v.
*United States*, 397 U.S. 742 (1970), has Copeland persuaded me
that any constitutional infirmity resulted from the fact the
judge *may* not have understood that she had the discretion to
empanel a new jury.  This is not a case where a judge committed
an error of law by affirmatively indicating that she lacked the
authority to take a certain action that the law in fact conferred
to her discretion.  *See*, *e.g.*, *United States* v. *Lombard*, 72 F.3d
170, 184-187 (1st Cir. 1995) (vacating sentence where trial court
believed it lacked discretion to depart from guidelines
sentencing range); *United States* v. *Rivera*, 994 F.2d 942, 953
(1st Cir. 1993) (same).  Here, Copeland did not ask that a new
jury be empaneled prior to deciding to waive his right to a jury
trial on the subsequent offense charges, nor did the trial judge
clearly indicate that she believed she lacked the authority to do
so.[6]  Under those circumstances, where Copeland clearly had no

---

[6] That the trial judge had already dismissed the jury before
inquiring as to whether or not Copeland wanted to try the
remaining charges to a jury suggests that the judge was indeed
aware of her discretion, because if Copeland had, in fact,
elected to try those charges to a jury, a new jury necessarily

*right* to a new jury, nothing about the Appeals Court's determination of this issue warrants the kind of extraordinary relief that a habeas petition entails.

## IV.    CONCLUSION

For the reasons set forth above, I DENY Copeland's petition for a writ of habeas corpus and direct the Clerk to dismiss the petition.

**_/s/ Douglas P. Woodlock_**
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT

---

would had to have been reconstituted and empaneled.